OSBORN LAW, P.C.
Daniel A. Osborn, Esq. (CSB No. 132472)
Adrianne J. Leven, Esq.
295 Madison Avenue, 39th Floor
New York, New York 10017
T: 212.725.9800
F: 212.725.9808
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

ROBERT NIGG and KEITH LEWIS,
as private attorney generals, individually,
and on behalf of all others similarly situated,

                          Plaintiffs,

          vs.

UNITED STATES POSTAL SERVICE,

                          Defendant.

) Case No.: SACV-03-01611-JVS (ANx)
)
)
) Hearing Date: October 3, 2011
) Time: 1:30 p.m.
) Judge: Hon. James V. Selna
) Courtroom: 10C
)
)
)
)
)
)
)
)
)

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFS' CLAIM FOR FLSA OVERTIME**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................ ii

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ...................................................................................................... 3

   A.   Postal Inspectors are Protected by the Exclusion to the Administrative Exemption ...... 3

   B.   Primary Duties ............................................................................................ 3

     1.   Postal Inspectors' Primary Duties Are Law Enforcement Activities
      Defined as Rigorous, Non-Office, Manual Work Unrelated To The
      Management or General Business Operations of the Postal Service ............................ 3

     2.   No Discretion and Independent Discretion on Matters of Significance ..................... 6

     3.   "Highly Compensated" .......................................................................... 9

   C.   The Postal Service Is Not Entitled To Judgment As A Matter Of Law
    On The Issue Of Its "Good Faith" Defense To Plaintiffs' FLSA Claims
    Because It Has Waived That Defense By Failing to Plead It, And In Any
    Event Cannot Prove That Defense As A Matter Of Law ................................................ 10

     1.   Summary ............................................................................................ 10

     2.   The Good Faith Defense under 29 U.S.C. Section 259 ............................................ 11

     3.   The 1976 Opinion Letter ........................................................................ 12

     4.   The Changes in the Postal Inspector Duties In The Mid
      1990s Should have caused the Postal Service to Inquire ........................................ 15

     5.   The 2004 Changes in the FLSA Regulations
      Should Have Caused the Postal Service to Inquire ............................................... 16

     6.   The Good Faith defense under 29 U.S.C. Section 260 ............................................ 17

     7.   Back Pay Period .................................................................................. 19

III. CONCLUSION .................................................................................................. 20

## TABLE OF AUTHORITIES

Cases

*246 Utility Workers v. Southern Cal. Edison Co.*,
    83 F.3d 292 (9th Cir. 1996) ................................................................................ 17

*Adam v. United States*,
    26 Cl. Ct. 782 (1992) ...................................................................................... 5

*Ahern v. New York*,
    807 F. Supp. 919 (N.D.N.Y. 1992) ................................................................. 5

*Alvarez v. IBP, Inc.*,
    339 F.3d 894 (9th Cir. 2003) ................................................................ 11, 12, 18

*Amshey v. U.S.*,
    26 Cl. Ct. 528, 602 (Cl. Ct. 1992) .................................................................. 5

*Bernard v. IBI Inc. of Nebraska*,
    154 F.3d 259 (5th Cir. 1998) .......................................................................... 17

*Bratt v. County of Los Angeles*,
    912 F.2d 1066 (9th Cir. 1990) ........................................................................ 5

*Brooklyn Savings Bank v. O'Neil*,
    324 U.S. 697 (1945) ....................................................................................... 16

*Bull v. U.S.*,
    68 Fed.Cl. 212 (2005). .................................................................................... 18

*Calderon v. Witvoet*,
    999 F.2d 1101 (7th Cir. 1993) ........................................................................ 16

*D'Camera v. District of Columbia*,
    693 F. Supp. 1208 (D.C.D.C. 1988) .............................................................. 5

*Dole v. Elliott Travel & Tours, Inc.*,
    942 F.2d 962 (6th Cir. 1991) .......................................................................... 18

*EEOC v. First Citizens Bank of Billings*,
    758 F.2d 397 (9th Cir.), *cert. denied*,
    474 U.S. 907, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985) ................................... 17

*Fazekas v. Cleveland Clinic Found. Health Care*,
    204 F.3d 673 (6th Cir. 1999) .......................................................................... 13

ii

*Greene v. Safeway Stores,*
   210 F.3d 1237 (10th Cir. 2000) ................................................. 17

*Heidtman v. County of El Paso,*
   171 F.3d 1038 (5th Cir. 1999) .................................................. 17

*Herman v. RSR Sec. Services Ltd.,*
   172 F.3d 132 (2nd Cir. 1999) ................................................... 17

*Jarrett v. ERC Properties, Inc.,*
   211 F.3d 1078 (8th Cir. 2000) .................................................. 17

*Joiner v. City of Macon,*
   814 F.2d 1537 (11th Cir. 1987) ................................................ 17

*McClanahan v. Mathews,*
   440 F.2d 320 (6th Cir. 1971) ................................................... 17

*McLaughlin v. Richland Shoe Co.,*
   486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) .................... 18

*Mulverhill v. New York,*
   No. 87-CV-853, 1994 WL 263594 (N.D.N.Y. May 19, 1994) ............... 5

*Nero v Industrial Molding Corp.,*
   167 F.3d 921 (5th Cir. 1999) ................................................... 17

*Reich v. New York,*
   3 F.3d 581 (2d Cir. 1993) ......................................................... 5

*Reich v. Southern New England Telecommunications Corp.,*
   121 F.3d 58 (2nd Cir. 1997) .................................................... 17

*Roney v. U.S.,*
   790 F. Supp. 23 (D.C.D.C. 1992) ......................................... 5, 14

*Shea v. Galaxie Lumber & Construction Co. Ltd,*
   152 F.3d 729 (7th Cir. 1998) ................................................... 17

*Statham v. U.S.,*
   2002 WL 31292278 (Fed. Cl. Sept. 11, 2002) ............................... 6

*Williams v. Tri-County Growers, Inc.,*
   747 F.2d 121 (3rd Cir. 1984) ................................................... 17

iii

Statutes

29 U.S.C. § 216 (b) ................................................................................ 16
29 U.S.C. § 259 .............................................................................. passim
29 U.S.C. Section 213(a) ............................................................................ 3
29 U.S.C. Section 255(a) .......................................................................... 18
29 U.S.C. Section 260 ...................................................................... 16, 17
Section 213(a)(1) ...................................................................................... 15

Regulations

29 C.F.R Section 541.3(b)(1) .............................................................. 2, 3, 6
29 C.F.R. § 541.202(a) and (f) ............................................................. 6, 8
29 C.F.R. § 541.601 .................................................................................. 8
29 C.F.R. § 790.13 (a) ............................................................................ 10
29 C.F.R. § 790.14 (b) ............................................................................ 15
29 C.F.R. § 790.14(a) .............................................................................. 11
29 C.F.R. § 790.15 .................................................................................. 10
29 C.F.R. § 790.15(a) .............................................................................. 11
29 C.F.R. § 790.16(a) .............................................................................. 11
29 C.F.R. § 790.16(b) .............................................................................. 11
29 C.F.R. §§ 541.3(b)(1) and (3) ............................................................ 4
29 C.F.R. 541 .......................................................................................... 15
29 C.F.R. 541.203(j) ................................................................................ 8
29 C.F.R. Section 541.3 .......................................................................... 15

Plaintiffs Robert Nigg and Keith Lewis, by and through their attorneys, submit this memorandum of points and authorities in opposition to the motion for summary judgment of defendant United States Postal Service on plaintiffs' claim for overtime pay under the Fair Labor Standards Act.

## I.   INTRODUCTION

Despite express statutory provisions that classify the position of a United States Postal Inspector as a rigorous position whose primary duties are the investigation, apprehension, and detention of persons who have broken U.S. laws, defendant Postal Service seeks to portray Postal Inspectors as a group of pencil-pushing, desk-jockeys who conduct their crime-fighting efforts from the comfort of their offices by making recommendations about how to improve security; developing, planning and implementing new programs and projects to improve the skills of Postal Service employees; and participating in training and outreach programs to educate postal service employees and customers.  Defendant does this in order to avoid the "non-office, manual work" aspect of the administrative exemption: if Postal Inspectors' primary duties are non-office, manual work, the administrative exemption does not apply and Postal Inspectors receive FLSA overtime.

In their motion for summary judgment [DE 311], plaintiffs provided substantial evidence establishing that their primary duties are non-office and manual in nature.  While seeking to argue to the contrary, the Postal Service's own motion touts that in fiscal year 2010, Postal Inspectors made more than 6,000 arrests.  The Postal Inspectors also demonstrated that position of Postal Inspector is classified as rigorous, includes the pursuit and apprehension of suspects, surveillance, the execution of search warrants and raids, and other physical skills that do not align with typical, administrative office work.  How many office jobs require an employee to carry a weapon and qualify, on an annual basis, to a certain level of proficiency with respect to

that weapon?  The above facts, at a minimum, create a triable issue of material fact as to the primary duties of Postal Inspectors.

The Postal Service's argument about discretion and independent judgment, if accepted, would make virtually every job exempt from FLSA overtime.  The Postal Service equates decision making with discretion and judgment.  It also suggests that just because a Postal Inspector works an assignment related to fraud (money), it is a matter of significance.  Neither argument is true.  Postal Inspectors make routine decisions every day as part of their work, but their decisions do not involve matters of significance.

The Postal Service also seeks to avoid liability by invoking the "good faith" defense, arguing that a 1976 letter from the Department of Labor justifies the exempt classification of Postal Inspectors.  The Postal Service's argument should be rejected for several reasons.  First, the Postal Service never raised, and has therefore waived, any such defense.  Second, the letter was written at a time when Postal Inspectors performed significant amounts of "audit" work.  In fact, audit work was one of the three categories of work identified by the Postal Service in its initial letter to the Department of Labor.  Audit work, and in particular "Yellow Book" audit work, was taken from Postal Inspectors in 1996 and given to the newly formed Office of Inspector General.[1]

Third, there have been significant changes in the law since 1976.  Major revisions to the FLSA were enacted in 2004, including the adoption of a regulation that excludes Postal Inspectors and other law enforcement personnel from the administrative and other exemptions, meaning they are entitled to overtime pay.  Notably, the Postal Service did not address, or even mention, this exclusion.  The language of 29 C.F.R Section 541.3(b)(1) is unambiguous and not

---

[1]    The "Yellow Book" is the standard by which audits are conducted within federal government agencies.  Belz Depo., Aug. 18, 2011, p. 88:16-18, attached as Exhibit A to the Second Declaration of Daniel A. Osborn, Esq., dated September 12, 2011 ("Osborn Second Decl.").

only compels the denial of the Postal Service's motion, but the granting of the Postal Inspectors' motion for summary judgment.

## II.    ARGUMENT

### A.    Postal Inspectors are Protected by the Exclusion to the Administrative Exemption

In the Postal Inspectors' brief in support of their motion for summary judgment, the Inspectors explained that none of the exemptions contained in 29 U.S.C. Section 213(a), which includes the administrative employee exemption, apply to Postal Inspectors by virtue of 29 C.F.R. Section 541.3(b)(1).  [DE 311-1 at pp. 11-13]  That regulation specifically provides that investigators and inspectors are not subject to the administrative exemption, the executive exemption or the professional exemption, meaning they are entitled to FLSA overtime pay. Defendant, despite having the burden of proof with respect to the application of any exemptions, completely ignored the Section 541.3(b)(1) exclusion in its motion for summary judgment.  For the reasons set forth in their opening brief, plaintiffs are entitled to judgment as a matter of law that the administrative exemption does not apply to them.

### B.    Primary Duties

#### 1.    Postal Inspectors' Primary Duties Are Law Enforcement Activities Defined as Rigorous, Non-Office, Manual Work Unrelated To The Management or General Business Operations of the Postal Service

In characterizing the Postal Inspectors' primary duty as the performance of office, non-manual work directly related to the management or general business operations of the Postal Service, the Postal Service submitted the declaration of Mr. Randy Miskanic, which sets forth 21 items that he claims constitute the "day-to-day duties" of Postal Inspectors.  (Miskanic Decl. ¶¶ 24-44; Def. Br. pp. 9-10).  In actuality, the majority of these tasks and activities are performed only rarely or occasionally, not on a daily basis.  Several (relating to management, training and

3

the resolution of disputes) are not performed at all.  Instead of identifying the actual day-to-day activities of Postal Inspectors, Mr. Miskanic appears to have simply compiled a list of every activity ever undertaken by any Postal Inspector anywhere.  The test, however, for application of the administrative exemption, relates to the primary duties of an employee, not some task or activity that might be occasionally or rarely performed.  Attached are declarations from a number of Postal Inspectors from various Inspection Service offices across the country attesting to the fact that the majority of the duties listed in Mr. Miskanic's declaration are rarely, if ever, performed by Postal Inspectors.[2]  The declarations further confirm that those duties that are performed on a day-to-day basis relate to the criminal (and other) investigations conducted by Postal Inspectors, and not the administrative-type tasks attributed to them by Mr. Miskanic and the Postal Service.  See Miskanic Decl. ¶¶ 38, 40, 42, 43, 44.

As explained in detail in plaintiffs' motion for summary judgment, the primary duties of Postal Inspectors are non-office, manual work not directly related to the management or general business operations of the Postal Service.  [DE 311-1 at pp. 13-15].  The Postal Inspectors' position is corroborated by the Department of Labor's 2004 amendments to the FLSA regulations, which explicitly provide that "police officers, detectives, . . . investigators, inspectors . . . and similar employees, regardless of rank or pay level, who perform work such as . . . preventing or detecting crimes; conducting investigations . . . for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; . . . interviewing witnesses; interrogating . . . suspects; preparing investigative reports; or other similar work" are not exempt administrative employees because "their primary duty is not the performance of work

---

[2]     See Declarations of Robert Nigg, Keith Lewis, Phil G. Garn, Charles Wagner, Terry Nappier, John L. Cowley, Edward C. Fluekiger, Peter J. Donnelly, Walter J. Nowelski, Kacy R. McClelland, Dominick J. Casciotta, Richard D. Carlson, Robert Northrop, John J. Fuccillo, Richard F. Atwood, and Paul K. Durand, attached as Exs. K-Z to Osborn Second Decl.

4

directly related to the management or general business operations of the employer[.]" 29 C.F.R.

§§ 541.3(b)(1) and (3).

The case law, likewise, confirms plaintiffs' position that Postal Inspectors' primary duties

are not directly related to the management or general business operations of their force. *See*

*Reich v. New York*, 3 F.3d 581, 586 (2d Cir. 1993) (police investigators whose primary duties

were to investigate crime scenes, gather evidence, interview witnesses, interrogate suspects,

make arrests, conduct surveillance, obtain warrants and testify in court are not exempt

administrators because their primary duty is conducting investigations, not administering the

affairs of the department itself); *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1068-70 (9th Cir.

1990) (probation officers whose primary duty is to conduct investigations and make sentencing

recommendations non-exempt because the "essence" of the primary duty test is to distinguish

between "the running of a business" and "the day-to-day carrying out of its affairs"); *Mulverhill*

*v. New York*, No. 87-CV-853, 1994 WL 263594, *4 (N.D.N.Y. May 19, 1994) (environmental

crimes investigators employed by New York's Department of Environmental Conversation non-

exempt because they "do not administer the business affairs of the agency"), attached as Ex. F to

Osborn Second Decl.; *Roney v. U.S.*, 790 F. Supp. 23, 27 (D.C.D.C. 1992) (U.S. Marshal who

provided court security non-exempt because his primary duty "does not relate to security policy

or operational management but rather to the application of security measures to the day-to-day

production process of working a courtroom"); *D'Camera v. District of Columbia*, 693 F. Supp.

1208, 1211 (D.C.D.C. 1988) (denying employer's motion for summary judgment against police

sergeants who "spend most of their time on the streets working with police officers, or

performing routine administrative duties"); *Ahern v. New York*, 807 F. Supp. 919, 926 (N.D.N.Y.

1992) (criminal investigators whose "primary duty . . . is to prevent, investigate and detect

serious violations of the criminal laws" non-exempt); *Adam v. United States*, 26 Cl. Ct. 782, 784,

5

789 (1992) (INS border patrol agents who primarily "perform[] intelligence, prosecutions, anti smuggling and/or other law enforcement work" non-exempt where "objective reading" of OPM regulations reveals an "obvious intent . . . to identify persons performing management or business functions"); *Amshey v. U.S.*, 26 Cl. Ct. 528, 602 (Cl. Ct. 1992) (sergeants and lieutenants with Secret Service uniformed division non-exempt). *Cf. Statham v. U.S.*, 2002 WL 31292278 at *8 (Fed. Cl. Sept. 11, 2002) (employee whose primary duty was to physically protect Secretary of Energy does not satisfy primary duty test because he "did not perform the managerial type functions that Congress intended to exempt from the FLSA").

Postal Inspectors are law enforcement officers whose primary duty is traditional criminal investigation. Performing occasional managerial or other administrative duties tangential to traditional law enforcement activities does not make Postal Inspectors administrative employees. Plaintiffs' duties correspond almost perfectly to the work listed in Section 541.3(b)(1), including, among other duties, performing surveillance, pursuing, restraining and apprehending suspects, interviewing witnesses, preparing investigative reports, and interrogating suspects. These are the same types of day-to-day activities performed by the other federal and state criminal investigators in the cases cited above. In short, plaintiffs' primary duties are traditional, non-administrative law enforcement tasks and thus they are not exempt from the FLSA.[3]

## 2. No Discretion and Independent Discretion on Matters of Significance

All jobs involve some discretion and independent judgment. For this reason, the regulations require that such discretion and independent judgment be tied to "matters of significance." 29 C.F.R. § 541.202(a). In their motion for summary judgment, the Postal

---

[3]    Plaintiffs have designated Mr. Don Wiley, a 34-year veteran of the Department of Labor, Wage and Hour Division, as an expert in this case. Mr. Wiley's original expert report, dated August 19, 2011, was filed with the Court as Exhibit X to the September 2, 2011 Osborn Decl. in connection with plaintiffs' motion for summary judgment [DE 311]. Mr. Wiley's rebuttal expert report, dated September 9, 2011, is being filed simultaneously herewith.

Inspectors demonstrated that they have a limited ability to exercise discretion and independent judgment at all, but especially not on matters of significance, for which the regulations provide ten examples. [DE 311-1 at pp. 15-10].  As set forth in their motion, Postal Inspectors:

1.  DO NOT  have the authority to formulate, affect, interpret, or implement management policies or operating practices;

2.  DO NOT carry out major assignments in conducting the operations of the Postal Service;

3.  DO NOT perform work that affects business operations to a substantial degree;

4.  DO NOT have authority to commit the employer in matters that have significant financial impact;

5.  DO NOT have authority to waive or deviate from established policies without prior approval;

6.  DO NOT have authority to negotiate and bind the company on significant matters;

7.  DO NOT provide consultation or expert advice to management;

8.  ARE NOT involved in planning long- or short-term business objectives;

9.  DO NOT resolve matters of significance on behalf of management; and

10. DO NOT represent the Postal Service in handling complaints, arbitrating disputes or resolving grievances.

The  Postal Inspectors further pointed out that their  discretion and judgment is limited by virtue of a set of operating procedures set forth in the U.S. Postal Inspection Service Manual (the "IS Manual").   The policies and procedures in the IS Manual are approved and issued by the head of the Inspection Service (the Chief Postal Inspector) and Postal Inspectors are given the IS Manual when they begin their basic training.  The IS Manual, however, contains almost 1400 pages of specific and general instructions, templates and guides which set clear parameters of what can be done and where the limits are.  The procedures are very specific and vary depending on the type of investigation being conducted.  The details of the instructions are meticulous and do not allow for much leeway.  Ultimately, the type of decisions made by Postal Inspectors

7

become relatively routine as they gain experience and is on the level of skill and knowledge obtained through training and experience. The discretion and independent judgment does not reach the necessary level of significance, but rather "involves the use of skills and technical abilities in gathering factual information, applying known standards or prescribed procedures, determining which procedure to follow or determining whether prescribed standards or criteria are met." 29 C.F.R. 541.203(j).

Decisions about who to interview, what questions to ask and when to request subpoenas hardly rise to the level of "matters of significance." Interview those persons who you think have information about the crime; ask them what they know, saw or did; and request subpoenas when you cannot obtain evidence on a voluntary basis. Deciding the priority of investigations would seem to involve common sense as much as anything else: cases of relative importance would take priority over cases of lesser importance. And decisions about the manner in which a case will be investigated or which investigative techniques to utilize do not qualify as decisions on matters of significance, as they simply involve "the use of skills and technical abilities in gathering factual information, applying known standards or prescribed procedures, determining which procedure to follow or determining whether prescribed standards or criteria are met." Try as it might to elevate these decisions to the level of exercising discretion and independent judgment on matters of significance, the Postal Service cannot align any of these decisions to the examples in the regulations. Moreover, the notion that those Postal Inspectors who work in the area of Revenue Fraud are automatically deemed to be working on matters of significance because their work involves money has been flatly rejected by the Department of Labor. 29 C.F.R. Section 541.202(f) provides that:

> An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly. For example, a messenger who is entrusted with carrying large sums of money does not exercise

8

discretion and independent judgment with respect to matters of significance even though serious consequences may flow from the employee's neglect. Similarly, an employee who operates very expensive equipment does not exercise discretion and independent judgment with respect to matters of significance merely because improper performance of the employee's duties may cause serious financial loss to the employer.

Plaintiffs have moved for summary judgment on this issue. At best, there is a triable issue of fact as to whether Postal Inspectors exercise discretion and independent judgment on matters of significance.

### 3.    "Highly Compensated"

As explained in plaintiffs' motion for summary judgment [DE 311], merely being "highly compensated" (earning more than $100,000 per year), does not remove an employee from the coverage and protection of the FLSA; it is simply an adjunct to the administrative exemption. If an employee is highly compensated, an employer seeking to invoke the administrative exemption must still show that the employee performs office or non-manual work and has identifiable executive, administrative, or professional duties that he customarily and regularly performs. 29 C.F.R. § 541.601. In other words, even if an employee is "highly compensated," the employee still needs to meet one part of the corresponding standardized duties test to qualify for the exemption.

In this case, the Postal Service argues that Postal Inspectors perform office, non-manual work directly related to the management or general business operations of the Postal Service or its customers. (Defs. Br. p. 24). For the reasons set forth in Section B.1 above at pages 3-6, plaintiffs submit that the primary work of Postal Inspectors is in fact manual, non-office work that is not directly related to the management or general business operations of the Postal

Service. Plaintiffs have moved for summary judgment in their favor on this issue. [DE 311]. At a minimum, a triable issue of material fact exists.[4]

**C.** **The Postal Service Is Not Entitled To Judgment As A Matter Of Law On The Issue Of Its "Good Faith" Defense To Plaintiffs' FLSA Claims Because It Has Waived That Defense By Failing to Plead It, And In Any Event Cannot Prove That Defense As A Matter Of Law**

**1.** **Summary**

In its motion for summary judgment, the Postal Service asserts that it is entitled to judgment as a matter of law under 29 U.S.C. § 259 because it "relied in good faith on and acted in conformity with a written ruling from the Department of Labor's Wage and Hour Administrator [in failing to pay FLSA overtime to postal inspectors from at least 1976 through today's date and continuing]." (Defs Br. p. 21). The Postal Service is incorrect. First, in order to even assert a "good faith" defense to liability under 29 U.S.C. Section 259, the Postal Service is required under the express language of the statute to "**plead and prove**" that defense. The Postal Service failed to plead a good faith defense under 29 U.S.C. Section 259 in its Answer filed in this action and therefore has waived that defense. *See*, Postal Service Answer, attached as Ex. I to the Second Osborn Decl. (Postal Service asserted only two affirmative defenses, one for "offset" and the second relating to the statute of limitations).

Moreover, even if the Postal Service had properly pled and preserved a "good faith" defense, it cannot prevail on that defense as a matter of law where substantial issues of fact exist as to whether the Postal Service acted in good faith, in reliance on, and in conformity with the

---

[4]   In its brief [DE 309], the Postal Service did not argue that Postal Inspectors who are highly compensated are exempt because they also exercise discretion and independent judgment on matters of significance. If that argument had been made, it would fail for the reasons set forth above at pages 6-9 and for the reasons set forth in plaintiffs' motion for summary judgment, namely, that they are subject to a highly detailed and comprehensive Inspection Service Manual and the manner in which they conduct their investigations merely involves skill in applying well-established techniques. *See* [DE 311-1, at pp. 15-19]

1976 opinion letter (the "1976 Opinion Letter"), as it now belatedly claims.  (A copy of the 1976 Opinion Letter and the Postal Service's request for an opinion letter is attached to the Osborn Second Decl. as Ex. H.)  This is because the good faith defense requires an employer to prove all three elements of the defense including the requirement that it prove that it had and continues to have "honesty of intention and no knowledge or circumstances which ought to put him upon inquiry." 29 C.F.R. § 790.15.  In this case, there were significant changes in the duties of Postal Inspectors in the mid 1990s as well as a substantial overhaul of the FLSA regulations in 2004.  Either one of those changes required an employer operating in good faith to inquire as to what effect those changes had on the employer's ongoing duty to comport its overtime policies with the strict mandate of the FLSA.  There is no evidence that the Postal Service inquired in good faith as to whether its obligations under the FLSA changed when the duties of Postal Inspectors changed or when the FLSA regulations changed.

### 2.     The Good Faith Defense under 29 U.S.C. Section 259

In pertinent part, 29 U.S.C. Section 259 reads:

> [N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay ... overtime compensation under the [FLSA] ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of [the relevant USDOL administrator], or any administrative practice or enforcement policy of such agency....

*See also*, 29 C.F.R. § 790.13 (a)("[A]n employer has a defense against liability or punishment in any action or proceeding brought against him for failure to comply with the minimum wage and overtime provisions of the Fair Labor Standards Act, where the employer pleads and proves that the act or omission complained of **was in good faith in conformity with** and **in reliance on** any administrative regulation, order, ruling, approval, or interpretation or any administrative practice or enforcement policy * * * with respect to the class of employers to which he belonged.  … The relief from liability or punishment provided by sections 9 and 10 of the Portal Act is **limited**

11

**by the statute to employers who both plead and prove all the requirements of the defen[s]e**.). (Internal quotations omitted).

To be insulated from liability under Section 259's good faith exception, an employer must "show it acted in (1) good faith, (2) conformity with, and (3) reliance on the DOL's regulations or the Administrator's Opinion Letter." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 907 (9th Cir. 2003). "This test has both objective and subjective components, asking how a 'reasonably prudent [person]' would have acted under the same or similar circumstances" and requiring 'that the employer have honesty of intention and <u>no knowledge of circumstances which ought to put him upon inquiry</u>.'" *Id. See also*, 29 C.F.R. § 790.15(a) ("Good faith requires that the employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry.")[5] (footnotes omitted). Under Section 259, employers have an affirmative duty to inquire about uncertain FLSA coverage issues and the risk of a close case is on the employer. *Id.* The employer bears the burden of pleading and proving the good faith exception. *Id.*

### 3.    The 1976 Opinion Letter

The Postal Service centers its good faith defense on the 1976 Opinion Letter by the Department of Labor Wage and Hour Division ("WHD"). However, the Postal Service ignores a number of changes that occurred since that letter was written that required the Postal Service to

---

[5]    The 'good faith' defense is not available to an employer unless the acts or omissions complained of were 'in conformity with' the regulation, order, ruling, approval, interpretation, administrative practice or enforcement policy upon which he relied. This is true even though the employer erroneously believes he conformed with it and in good faith relied upon it: actual conformity is necessary." 29 C.F.R. § 790.14(a) (footnote omitted). "In addition to acting (or omitting to act) in good faith and in conformity with an administrative regulation, order, ruling, approval, interpretation, enforcement policy or practice, the employer must also prove that he actually relied upon it." 29 C.F.R. § 790.16(a). If an employer has "no knowledge of the administrator's interpretation at the time of his violations, his failure to comply with the overtime provisions could not have been 'in reliance on' that interpretation; consequently, he has no defense under section 9 or section 10 of the Portal Act." 29 C.F.R. § 790.16(b).

inquire further as to what effect such changes had on the FLSA status of Postal Inspectors. First, the Postal Service ignored, and continues to ignore, the fact that the actual job duties of Postal Inspectors changed significantly in the mid-1990s when the Postal Service created the Office of Inspector General and gave it the audit function previously performed by Postal Inspectors. Second, the Postal Service ignored, and continues to ignore, the fact that the law changed significantly in many pertinent respects in 2004, not the least of which was, for the first time, an express statement of FLSA non exempt status for law enforcement officers. Third, the Postal Service overstates the meaning and effect of the 1976 Opinion Letter and fails to prove that its failure to pay Postal Inspectors overtime wages was based on **in good faith, in conformity with** and **in reliance on** the 1976 DOL opinion letter. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 907 (9th Cir. 2003), *aff'd. IBP, Inc. v. Alvarez*, 126 S. Ct. 514, 163 L.Ed.2d 288, 546 U.S. 21 (2005).

Moreover, there are a number of reasons to question whether the 1976 Opinion Letter would have even supported the Postal Service's good faith defense as a matter of law in 1976, much less today. First, the 1976 Opinion Letter refers to additional unspecified discussions that its WHD staff allegedly had with the Postal Service prior to issuing its letter. There is no evidence as what additional information, if any, the Postal Service gave to the WHD during those discussions or that meeting. It is apparent, however, from the language of the Postal Service's request, that the Chief Postal Inspector and the WHD had already decided that Postal Inspectors were exempt and that the 1976 Opinion Letter was only seeking to "confirm" the Postal Service's prior conclusion. For example:

> (i)     the Postal Service notes only that the Inspection Service is the investigative arm of the Postal Service and that Postal Inspectors are authorized to serve warrants and subpoenas and make arrests;

> (ii)    the Postal Service also describes the three main areas of the Inspection Services responsibilities as criminal investigations, security, and internal audits of all Postal Service financial and non-financial

operations.  As stated, previously, the audit function was removed from the Postal Inspector's job duties in the mid 1990s; and

(iii)   The Postal Service simply asserts that Postal Inspectors exercise independent judgment and discretion, but only point to Postal Inspectors "setting their investigative priorities based upon the relative importance of cases assigned, their workload, and official travel."

Osborn Second Decl. Ex. H.

The 1976 Opinion Letter, in turn, simply states that Postal Inspectors "<u>appear</u> to have as their primary duty the performance of work directly related to the general business operation of their employer, including the exercise of discretion and judgment."  Other than that statement, the WHD provides no further information.  The 1976 Opinion Letter does not explain how the Postal Inspectors' duties "directly related to the general business operation of their employer" or give any clarity to what constitutes the Postal Inspectors' "exercise of discretion and judgment." Moreover, the 1976 Opinion Letter does not address in any way whether Postal Inspectors perform "office and non-manual" work.   There is no evidence that WHD conducted an investigation in response to the Postal Service letter in 1976 and there is no indication that additional significant information was sought.  Ultimately, there is not sufficient information in the Postal Service request letter to make a determination of Postal Inspector's exempt status in 1976 as a matter of law.  As such, there certainly is not sufficient information to give that letter continued credence as a matter of law given the changes in Postal Inspector duties and change in the FLSA regulations that have occurred since 1976.[6]

---

[6]      As a point of interest, the 1976 Opinion Letter is not signed by the administrator, Ronald J. James.  Instead, the letter has the signature stamp of the Deputy Administrator Warren D. Landis.  It is, therefore, impossible to say who actually wrote the letter, but apparently no one actually signed it.  This fact calls into question whether the 1976 Opinion Letter is actually an advisory opinion of the DOL Administrator and not a lower ranking official within the DOL. *See Fazekas v. Cleveland Clinic Found. Health Care*, 204 F.3d 673 (6th Cir. 1999) (opinion letter from lower ranking DOL officials other than the Administrator entitled to no deference by Courts).  It is also unclear exactly when the letter was written as the date is not legible.

14

### 4.    The Changes in the Postal Inspector Duties In The Mid 1990s Should have caused the Postal Service to Inquire

The Office of Inspector General ("OIG") of the Postal Service was formed in 1996. Subsequently, the Postal Service OIG took over the audit function previously performed by Postal Inspectors.   This audit activity was gradually eliminated from the duties and responsibilities of the Postal Inspectors and the chapter relating to audits was removed from the Inspection Service Manual (April 4, 2000).

Prior to the creation of the OIG, Postal Inspectors had a dual role, acting both as criminal investigators. Belz Depo., dated January 20, 2005, 148:20-21.   The audits would include going to individual post offices to count stamp stock and look at other financial aspects of a specific post office.  Inspectors would report the results to the Postal Service for purposes of certifying the financial statements of the Postal Service.  Postal Inspectors also would conduct contract fraud audits to ensure that the vendor and the Postal Service were acting in conformity and compliance with the contract.  *Id.* at 149:5-15.  Another type of audit was "mail conditional audits," in which Inspectors would actually go into a post office and view how the mail was moving through the system to see if there were any problems and see if it could be made more efficient. *Id.* at 149:16-20.  Mr. Belz testified that "there were a slew of others." *Id.* at 149:22.

The removal of the audit function from the Postal Inspectors' duties and responsibilities was a significant change.  *See* Memorandum from Norman Hancock, Postal Service Assistant Inspector General to Yvonne Maguire, Postal Service VP of Human Resources and Kenneth Hunter, Chief Postal Inspector, dated September 21, 1999, Osborn Second Decl. Ex. B (the audit discussed in this memorandum concluded that Postal Inspectors performing audits were not properly classified as criminal investigators).  Moreover, the audit function was one of "the three main categories of Inspection Service responsibility" relied on by the Postal Service in 1976 to justify the administrative exemption in its request to the WHD for an opinion letter.

Accordingly, this change in the Postal Inspectors' duties and responsibilities would have put a reasonably prudent person on notice, and should have put the Postal Service on notice, to question the exempt status of the Postal Inspectors. *See also*, 29 C.F.R. § 790.14 (b) ("An example of an employer <u>not</u> acting "in conformity with" an administrative regulation, order, ruling, approval, practice, or enforcement policy is a situation where an employer receives a letter from the Administrator of the Wage and Hour Division, stating that if **certain specified circumstances and facts regarding the work performed by the employer's employees <u>exist</u>**, the employees are, in his opinion, exempt from provisions of the Fair Labor Standards Act. [If on the other hand], [o]ne of these **hypothetical circumstances upon which the opinion was <u>based does not exist</u>** regarding these employees, but the employer, erroneously assuming that this circumstance is irrelevant, relies upon the Administrator's ruling and fails to compensate the employees in accordance with the Act. **Since he did not act "in conformity" with that opinion, he has no defense under section 9 or 10 of the Portal Act.").** [7]

### 5.   The 2004 Changes in the FLSA Regulations Should Have Caused the Postal Service to Inquire

In 2003, the federal regulations defining and delimiting the Section 213(a)(1) exemptions, 29 C.F.R. 541, were opened for proposed rule making. In 2004, the Department of Labor rewrote the regulations, effective August, 2004. Among the changes made in 2004 were revisions which expressly stated that law enforcement officers, including public agency inspectors and investigators, are not exempt under Section 213(a)(1), meaning they are entitled to FLSA overtime. The addition of 29 C.F.R. Section 541.3 in the 2004 regulations should have caused every reasonably prudent employer of law enforcement officers, including the Postal

---

[7]   In or about 2001, Postal Inspector and plaintiff Robert Nigg took action against the Postal Service before the Merit Systems Protection Board ("MSPB"). In his action against the Postal Service, Mr. Nigg raised various issues, including applicability of the Section 213(a)(1) exemptions. This action by Mr. Nigg also would cause a reasonably prudent person to question the exempt status of the Postal Inspectors. *See* Ex. C, D and E to Osborn Second Decl.

Service, to inquire whether any law enforcement officers were still exempt.  There is no evidence that the Postal Service made any such inquiry.

The Postal Service contends that it periodically reviewed the exempt status of Postal Inspectors by analyzing their job duties and responsibilities.  The documents relating to these reviews, however, lack any real analysis and do not show that the Postal Service truly considered whether the 1976 Opinion Letter remained valid (assuming it was ever valid).  In any event, even if the Postal Service was justified in relying on the 1976 DOL Opinion Letter in 1976, it cannot claim that it acted in good faith as a matter of law by continuing to rely on the 1976 DOL letter after the Postal Inspectors' duties and responsibilities were changed in the mid 1990s and after the FLSA regulations were changed in 2004.  Instead, there is, at best from the Postal Service's perspective, an issue of fact as to whether a reasonably prudent employer should have obtained an updated DOL letter based on the change in Postal Inspector duties in the mid 1990s as well as the change in the law in 2004. .

### 6.   The Good Faith defense under 29 U.S.C. Section 260

An award of liquidated damages in an amount equal to the unpaid back wages is mandated in the case of a violation of the FLSA, in addition to the overtime due and owing under the statute.[8]  *See* 29 U.S.C. § 216 (b) ("Any employer who violates the provisions of section 206 or section 207 of this title [hours of work over 40 per week] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages.")

However, under 29 U.S.C. Section 260, an employer may be relieved from payment of liquidated damages:

---

[8]     The FLSA not only requires proper payment of wages but that it also requires the timely payment of proper wages.  Late payment of proper FLSA overtime triggers the liquidated damages provision of the Act.  *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945); *Calderon v. Witvoet*, 999 F.2d 1101, 1107 (7th Cir. 1993).

> if the employer shows to the satisfaction of the court that the act or
> omission giving rise to such action was in good faith and that he
> had reasonable grounds for believing that his act or omission was
> not a violation[of the FLSA].

The trier of fact <u>must</u> award liquidated damages unless the employer meets its substantial burden of proof to avoid liquidated damages. *See, Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58 (2nd Cir. 1997); *Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078 (8th Cir. 2000). Thus, the trier of fact's decision whether to award liquidated damages does not become discretionary until the employer carries its burden of proving good faith.   In other words, liquidated damages are mandatory absent a showing of good faith.  *Greene v. Safeway Stores*, 210 F.3d 1237 (10th Cir. 2000); *Nero v Industrial Molding Corp.*, 167 F.3d 921 (5th Cir. 1999); *Bernard v. IBI Inc. of Nebraska*, 154 F.3d 259 (5th Cir. 1998); *EEOC v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir.), *cert. denied*, 474 U.S. 907, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985).

In the event that the trier of fact finds that an employer acted in good faith in failing to pay FLSA overtime wages, it may still award up to the full amount of liquidated damages. *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3rd Cir. 1984); *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987); *L-246 Utility Workers v. Southern Cal. Edison Co.*, 83 F.3d 292 (9th Cir. 1996); *Heidtman v. County of El Paso*, 171 F.3d 1038 (5th Cir. 1999); *McClanahan v. Mathews*, 440 F.2d 320 (6th Cir. 1971).   The employer bears the burden of showing good faith and there is strong presumption in doubling the award.  *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132 (2nd Cir. 1999); *Shea v. Galaxie Lumber & Construction Co. Ltd*, 152 F.3d 729 (7th Cir. 1998).  In this case, to the extent that the Postal Service's motion seeks a ruling as a matter of law that the Postal Service acted in good faith, plaintiffs oppose summary judgment on the issue of liquidated damages under 29 U.S.C. Section 260 for all of the reasons that they oppose summary judgment under 29 U.S.C. Section 259, above.

### 7.    Back Pay Period

The limitations period for an FLSA action is contained in 29 U.S.C. Section 255(a). Generally, an FLSA claim must be filed within **two years** of the accrual of the claim. However, a cause of action arising out of a "willful violation" may be commenced within three years after the cause of action accrued. The Supreme Court has interpreted the term "willful" to mean "that the employer either knew or showed <u>reckless disregard</u> as to whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991). "'Reckless disregard' is further defined as the 'failure to make <u>adequate inquiry</u> into whether conduct is in compliance with the Act.'" *Bull v. U.S.*, 68 Fed.Cl. 212 (2005) at 272-73; *see also Alvarez v. IBP, Inc.*, 339 F.3d 894, 908-09 (9th Cir. 2003) ("For § 255's extension to obtain an employer need not knowingly have violated the FLSA; rather, the three-year term can apply where an employer disregarded the very 'possibility' that it was violating the statute, although we will not presume that conduct was willful in the absence of evidence"). Because there is no evidence that the Postal Service made <u>any</u> inquiry to the Department of Labor in the face of changes in Postal Inspector duties and the subsequent changes in the FLSA regulations, it cannot meet its burden of showing that it made an "adequate inquiry." Therefore, to the extent that the Postal Service attempts to use its "good faith" argument to seek the application of a two year statute as a matter of law, that argument fails for the same reason that the Postal Service is not entitled to judgment as a matter of law on its alleged "good faith" defense under 29 U.S.C. Section 259.

III.    **CONCLUSION**

For the forgoing reasons, plaintiffs Nigg and Lewis, on behalf of themselves and all other similarly situated Postal Inspectors. respectfully request that this Court deny defendant's motion for summary judgment on plaintiffs' claim for FLSA overtime pay.

Dated: September 12, 2011
        New York, New York

OSBORN LAW, P.C.

/s Daniel A. Osborn
Daniel A. Osborn, Esq. (CSB No. 132472)
Adrianne J. Leven, Esq.
295 Madison Avenue, 39th Floor
New York, New York 10017
T:  212.725.9800
F:  212.725.9808
*Attorneys for Plaintiffs*

20

OSBORN LAW, P.C.
Daniel A. Osborn, Esq. (CSB No. 132472)
Adrianne J. Leven, Esq.
295 Madison Avenue, 39th Floor
New York, New York 10017
T: 212.725.9800
F: 212.725.9808
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ROBERT NIGG and KEITH LEWIS, as private attorney generals, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> vs. <br><br> UNITED STATES POSTAL SERVICE, <br><br> Defendant. | Case No.: SACV-03-01611-JVS (ANx) <br><br> Hearing Date:  October 3, 2011 <br> Time:  1:30 p.m. <br> Judge: Hon. James V. Selna <br> Courtroom: 10C <br><br> **CERTIFICATE OF SERVICE** |

I hereby certify that on September 12, 2011, a copy of the foregoing **PLAINTIFFS'**
**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM**
**FOR FLSA OVERTIME, STATEMENT OF DISPUTED FACTS, DECLARATION OF**
**DANIEL A. OSBORN AND ACCOMPANYING EXHIBITS and DECLARATION OF**
**DONALD WILEY AND ACCOMPANYING EXHIBITS** were served on the UNITED

STATES ATTORNEY for the United States Postal Service, at Jason.Axe@usdoj.gov by way of

this Court's Electronic Court Filing system ("ECF").

Dated: September 12, 2011
       New York, New York

                                    By:   /s/ Daniel A. Osborn
                                          Daniel A. Osborn

22